**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **TARA GROGAN,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL ACTION NO. _____** |
| **v.** | § | |
| | § | |
| **EK REAL ESTATE SERVICES OF NY,** | § | |
| **LLC, ET AL. ,** | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff **TARA GROGAN** files this *Original Complaint* against the unauthorized, predatory lending tactics of Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, LLC**, and seeks redress for, among other causes, multiple violations of the Truth In Lending Act, 15 U.S.C. §1601 *et seq.* (hereinafter, "TILA") and Federal Reserve Board of Regulation Z, 12 C.F.R. §226 promulgated pursuant thereto, and multiple violations of Texas Finance Code, including §§ 305.001, *et seq.*, and §§ 341.001, *et seq.,* and in support thereof would show the Court as follows:

## PARTIES

1. Plaintiff **TARA GROGAN ("GROGAN")** is a resident of Harris County, Texas and is the person who owned the real property at issue in this suit.

2. Defendant **EK REAL ESTATE SERVICES OF NY, LLC, an Affiliate of EASYKNOCK, INC. ("EK REAL ESTATE"),** is a foreign limited liability company organized and existing under the laws of the State of Delaware but, as of September 27, 2019, is authorized to do business in the State of Texas. **EK REAL ESTATE** conducted business in this state before that time, including in connection with the transactions at issue in this lawsuit, without properly

being authorized to do so. **EK REAL ESTATE's** principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, and it may be served with a copy of this *Original Complaint* by and through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

3.      Defendant **EASYKNOCK, INC., ("EASYKNOCK")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 215 Park Avenue South, Suite 1713, New York, NY 10003. **EASYKNOCK** is the sole member of Defendant **EK REAL ESTATE**. **EASYKNOCK** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit; thus, **EASYKNOCK** may be served through the Texas Secretary of State pursuant to FED. R. CIV. P. 4(h)(1)(A) and TEX. CIV. PRAC. & REM. CODE § 17.044, via US Mail: Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

4.      Defendant **LENDINGONE, LLC ("LENDINGONE")** is a foreign corporation organized and existing under the laws of the State of Delaware but, as of July 2, 2020, is authorized to do business in the State of Texas. **LENDINGONE** conducted business in this state before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **LENDINGONE's** principal office is located at 901 Northwest 51st Street, Suite 150, Boca Raton, FL 33431, and it may be served with a copy of this *Original Complaint* by serving its registered agent for service Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Travis County, Texas 78731.

## JURISDICTION

5.       Jurisdiction is proper in this Court for the violations of the Truth-In-Lending Act pursuant to 15 U S.C. §§ 1601, *et seq.*, as well as 28 U.S.C. §§ 1331 and 1337.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs.  This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

6.       This Court has general personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Texas, each Defendant's contacts with Texas are continuous and systematic, and each Defendant can be considered essentially at home in Texas.  This Court also has specific personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant purposefully directed its wrongful activities at **GROGAN**, a resident of the forum, each Defendant's conduct caused, and **GROGAN's** suit seeks redress for, harm caused by each of Defendant's wrongful actions which either took place inside of the forum and/or were purposefully directed at **GROGAN** in the forum.

## VENUE

7.       Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) and Tex. Fin. Code § 349.401 since this case arises from a dispute concerning real property situated in Harris County, Texas and because the Southern District of Texas—Houston Division, the district in which

Houston, Harris County, Texas sits, is a judicial district in which the underlying transactions and a substantial part of the events or omissions giving rise to the claims occurred.  Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant is deemed to reside in Harris County, Texas since each Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the district is located.

## FACTS

8.      On or about December 12, 2012, Plaintiff **GROGAN** purchased a house and the real property located at 2222 Isabella, Houston, Texas 77004, more fully described as Lot Six (6), Block Six (6), of WASHINGTON TERRACE, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 557, Page 68, of the Deed Records of Harris County, Texas ("the Property").  *(See Exhibit "A" –Warranty Deed to Tara Grogan attached hereto and incorporated herein for all purposes.)*   **GROGAN** has resided at the Property continuously from that that date.  At the time of the transactions at issue in this dispute, the Property was designated as **GROGAN's** residential homestead.

9.      In or about October 2018, **GROGAN** found herself without a job, without savings, and in desperate need of an influx in cash to help her get a new home remodeling business off the ground.  The one asset that **GROGAN** did have was her homestead Property.  At that time, the Property was worth more than $300,000, and **GROGAN** owned it free and clear of all liens save and except for about $14,000 in property tax liens.  Unfortunately, in October 2018, **GROGAN** also had poor credit and did not qualify for a traditional home equity loan.

10.      In or about October 2018, **GROGAN** conducted Internet searches for potential home equity lenders for individuals with bad credit.  Almost immediately after conducting these

online searches, **GROGAN** was bombarded with advertisements on Google and Facebook for **EASYKNOCK's** home equity loan program. Defendant **EASYKNOCK**, the sole Member of **EK REAL ESTATE**, represented to **GROGAN** and the world in these advertisements that they offered "Home Refinance With Bad Credit – No Minimum Credit Requirements." *(See Exhibit "B" – Screenshot of Recent Example of **EASYKNOCK's** Home Refinance Advertisement on Google, with a link to easyknock.com website, a copy of which is attached hereto and incorporated herein for all purposes. This advertisement is substantially similar to the ones that **GROGAN** saw on Google and Facebook.)* Upon information and belief, **EASYKNOCK** used online target ad words to increase its visibility on searches for home equity lenders and to target its advertisements on Google and Facebook to people like **GROGAN** who search for low income, no credit check, home equity loans.

11. In their online advertising and during a series of follow-up email and phone call communications with this potential home equity lender in late October, November, and December 2018, **EASYKNOCK** indicated to **GROGAN** that it would loan her money based on a portion of the equity in her Property and the execution of a lease agreement. What **GROGAN** didn't know at the time (and what Defendants failed to inform her) is that **EASYKNOCK**, as part of its purported equity loan transaction, planned to remove her name from the deed on her Property and place the deed to her Property entirely in the name of **EK REAL ESTATE**, its wholly owned subsidiary. This type of transaction is known as a "Sale-Leaseback," and it is highly disfavored in Texas, particularly when the transaction involves a Texas citizen's homestead.

12. Throughout these calls and emails, **EASYKNOCK** represented that the lease agreement would include an option to pay off **EASYKNOCK's** loan, which would be secured by a portion of **GROGAN's** equity in her Property. **EASYKNOCK** also promised **GROGAN** that

she would retain the remaining equity in her Property—the equity difference between the Property's total market value and the amount of **EASYKNOCK's** secured funding.

13.     All communications concerning the transaction between **GROGAN** were with **EASYKNOCK** and its employees or representatives.  All material sent to **GROGAN** was sent by **EASYKNOCK,** the sole Member to Defendant **EK REAL ESTATE**.

14.     During these calls and emails, Defendants **EASYKNOCK** and **EK REAL ESTATE**'s assured **GROGAN** that she could "release" a portion of the equity in her Property while maintaining an equity interest in her home and keeping possession of her home.  They further represented to **GROGAN** that she could either repay the loan and gain back the secured portion of the equity in her homestead Property or sell the Property during her lease and unlock her additional retained equity in her homestead Property.

15.     **GROGAN** understood from these communications that **EASYKNOCK's** program would operate as a loan secured by equivalent equity in her Property.  **EASYKNOCK** proposed cashing out only a portion of her equity in the Property (about 25% of her Property's value), not the full value of the home.  **GROGAN** understood from these communications that she would retain about 75% of the equity value of her Property. **EASYKNOCK** told her that she could pay off the amount **EASYKNOCK** funded in exchange for a release of **EASYKNOCK's** secured interest in that portion of the equity of her Property. In the interim, **GROGAN** was told she would continue to live in her home and make monthly payments to **EASYKNOCK** just like she would for any traditional home equity loan. **GROGAN** only ever intended the transaction to be a home equity loan for about 25% of her home's value, not a complete sale of her rights and interest in her homestead.

16.     In their communications with **GROGAN**, **EASYKNOCK's** representatives referred to themselves as "Equity Specialists."   Their advertisements and solicitations included the term "Home Refinance" for folks with bad credit and referred to their "new flexible equity release program which enables you to access the equity without having to move."   Further, **EASYKNOCK's** described that **GROGAN** would need to complete a credit and criminal background check, provide certain income documents (3 months of her bank statements) as part of **EASYKNOCK's** "credit authorization."   Clearly, Defendants **EK REAL ESTATE** and **EASYKNOCK** recognized that the transaction made the basis of this suit was a "loan" requiring credit and income authorization and that they were acting as "lenders."

17.     None of Defendants **LENDINGONE, EASYKNOCK,** or **EK REAL ESTATE** is a qualified lender in Texas with the Texas Office of Consumer Credit Commission (OCCC).

18.     Despite not being a qualified lender in Texas at the time of the "Sale-Leaseback" transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** represented to **GROGAN** that transaction was a "home equity loan."

19.     At the time of these transactions, none of the Defendants was even registered to conduct any type of business in Texas—despite them regularly doing so.

20.     To induce **GROGAN** to close on their "Sale-Leaseback" loan transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** told **GROGAN** that they could give her the money quickly and when she was ready to get a new home loan then she could pay off or purchase back **EASYKNOCK's** secured equity interest in the Property at any time.   The representatives of **EASYKNOCK** and **EK REAL ESTATE** kept reiterating that **GROGAN** would still have plenty of equity left in her homestead Property.

21.     **EASYKNOCK** and **EK REAL ESTATE** even went so far as to represent that **EK REAL ESTATE** and **GROGAN** would each be listed on the deed to the Property to reflect their respective interests in the Property after closing.  More specifically, **EASYKNOCK** and **EK REAL ESTATE** told her not to worry if **EK REAL ESTATE's** name appears first on the deed, that was just they way they had to document their transaction.  **EASYKNOCK** and **EK REAL ESTATE** represented and assured **GROGAN** that she would maintain at least a 76.5% share of the equity in her Property and that **GROGAN** retained equity value in her Property was worth at least $233,000.00 in cash at the time of closing.  **EASYKNOCK** and **EK REAL ESTATE** further represented and assured her that she would receive this value for her retained equity share of the Property if, after closing her loan with **EASYKNOCK**, she ever decided to sell her homestead.

22.     Based on **EASYKNOCK** and **EK REAL ESTATE's** representations about the transaction, including its operation as a home equity loan and her retained equity interest in the Property, **GROGAN**, ultimately agreed to go forward with **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback" loan transaction.  Based on their representations about what amounted to a home equity loan, on or about December 20, 2018, **GROGAN** deeded the Property to Defendant **EK REAL ESTATE**. *(See Exhibit "C" – General Warranty Deed with Vendor's Lien which is attached hereto and incorporated herein for all purposes.)*  The Warranty Deed contained a Vendor's Lien in favor of Defendant **LENDINGONE**, who loaned to **EK REAL ESTATE** the sum of $78,000.00 to facilitate the impermissible "Sale-Leaseback" loan transaction for the Property.  Upon information and belief, Defendant **EK REAL ESTATE** further executed a *Note, Deed of Trust, Commercial Security Agreement and Assignment of Rents* in favor of Defendant **LENDINGONE**.

23.     Defendant **LENDINGONE** advertises itself as a specialized mortgage lender which provides lending in all states except for Alaska, Nevada, North Dakota, South Dakota, and Utah.  **LENDINGONE** is a licensed lender in four states: Arizona, Minnesota, Oregon, and Vermont.  As a licensed lender, **LENDINGONE** is or should be familiar with the requirements and restrictions imposed on mortgage lenders under federal and Texas law, including those found in the Truth in Lending Act, the Texas Finance Code, and the Texas Property Code.

24.     Defendant **LENDINGONE** either did know or should have known that Defendants **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback" loan transaction with **GROGAN** and tens (if not hundreds) of other Texas citizens failed to comply with these requirements and restrictions.   Nevertheless, Defendant **LENDINGONE** facilitated and enabled Defendants **EASYKNOCK** and **EK REAL ESTATE**'s scheme by providing funding for a substantial portion of their improper loan transactions in Texas, including **GROGAN's**.

25.     As a further part of these transactions, **GROGAN** entered into a *Lease with Tenant Option Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit "D" – Lease with Tenant Option Agreement, Exhibit "A" to Summary of Sell and Stay, pp.23-42, which is attached hereto and incorporated herein for all purposes)*.  The Lease was for an initial period of twelve (12) months at a rental rate of $18,900.00 for the year ($1,575.00 per month).

26.     The Lease itself states that it is renewable for consecutive one-year terms in perpetuity.  However, **EASYKNOCK** and **EK REAL ESTATES's** misrepresents that the Lease is only renewable annually until the end of the 36th month of any Lease term.  During the first 36 months of the Lease, if certain conditions were met, **GROGAN** could pay off the loan by "repurchasing" **EASYKNOCK's** secured equity interest in the Property.  To do so, however, **GROGAN** would have to tender a payment of $77,291.00 to pay off **EASYKNOCK's** loan, which

amount escalated on an annual basis (at a rate equal to no less than 2.5% of the prior year's amount), plus all closing costs (including, but not limited to, broker's commissions, transfer taxes, attorneys' fees, and filing fees) paid by Defendant **EK REAL ESTATE**.  In the interim, **GROGAN** was responsible for paying all Rent and Additional Rent due Defendant **EK REAL ESTATE** under the Lease.

27.     For the "right" to enter into a Lease for her Property—potentially, in perpetuity— **EK REAL ESTATE** charged **GROGAN** $233,434.00, an amount which was charged against and deducted from the $305,000.00 alleged "Contract Sales Price."  This Lease charge represented more than 2/3 of the total stated purchase price for the Property.  In addition to this $233,434.00 Lease charge, **GROGAN** was charged monthly base rent of $18,900.00 per year for the first year of the Lease term, an amount which escalated in every consecutive one-year term of the Lease. After the "Sale-Leaseback" loan transaction, **GROGAN** remained solely responsible for all repairs and maintenance on the Property.  If Defendant **EK REAL ESTATE** paid for any repairs or maintenance, **GROGAN**, as the Tenant was responsible for reimbursement to Defendant **EK REAL ESTATE** as "Additional Rent".

28.     The rent charged by Defendants **EASYKNOCK** and **EK REAL ESTATE** to **GROGAN** exceeded the fair market rental rates in Houston, Harris County, Texas for similar properties.   In addition to the $233,434.00 charge to lease the Property, Defendants **EASYKNOCK** and **EK REAL ESTATE** charged **GROGAN** monthly rent. Defendants **EASYKNOCK** and **EK REAL ESTATE** use a set formula (and not market rates) to charge victims of their wrongful "Sale-Leaseback" loan scheme, like Plaintiff **GROGAN**, monthly rent equal to approximately 0.75% of the equity amount **LENDINGONE** provided **EASYKNOCK** and **EK REAL ESTATE** at closing (9% interest per year) *plus* prorated taxes and insurance for

the Property.  Thus, the monthly and other "rent" charges to **EASYKNOCK** and **EK REAL ESTATE** were not designed based on market rates for leasing properties like **GROGAN's**. Rather, their monthly payment termed "rent" consisted of every amount that this transaction would cost **EASYKNOCK** and **EK REAL ESTATE** monthly: monthly insurance, monthly property taxes, and monthly interest on **LENDINGONE's** loan to **EASYKNOCK** and **EK REAL ESTATE**.  And **EASYKNOCK** and **EK REAL ESTATE** took security on the front end of this transaction in the form of **GROGAN's** entire equity value in her home, rather than just the value of the equity needed to secure the amount funded.  **EASYKNOCK** and **EK REAL ESTATE** did this surreptitiously to ensure that its transaction costs would always be covered by **GROGAN's** alleged retained equity in the Property, not just the equity covered by its home equity loan funding.

29.     All invoices for the rent, past due rent, and other charges came from Defendant **EASYKNOCK.**

30.     Defendants never asked for, nor did they ever receive, a waiver of homestead from **GROGAN** in the "Sale-Leaseback" loan transaction.

31.     Upon information and belief, **EK REAL ESTATE** and **EASYKNOCK** obtained an appraisal to justify the $305,000.00 value ascribed to **GROGAN**'s Property.  Indeed, **EASYKNOCK** represented to **GROGAN** that an appraisal and a home inspection was a requirement before the loan transaction could close.

32.     **GROGAN** owned her homestead Property free and clear of all liens at the time of the Sale-Leaseback transaction except for two liens for the payment of property taxes.  Those liens (which were held by Propel Financial Services, LLC) totaled $13,778.91 at the time of closing. Based on an appraised value of at least $305,000 (the amount listed by **EASYKNOCK** and **EK REAL ESTATE** as the Contract Sales Price), at the time of closing, **GROGAN's** equity value in

her Property was worth at least $291,221.09. **GROGAN's** equity in her Property was worth about 95.5% of the total stated contract value of the Property.

33.     Despite having more than $291,000.00 in equity in her Property at the closing, **GROGAN** received only $37,603.54 in cash out of the listed $305,000.00 "Contract Sales Price," about 12% of the total alleged sales price and about 83% less than **GROGAN's** total equity value in her Property at closing. In addition to outrageous closing costs burdened upon **GROGAN** by Defendants, on the Settlement Statement, Defendants **EK REAL ESTATE** and **EASYKNOCK** deducted a charge of $233,434.00 as a "Tenant Lease Agreement" from **GROGAN**'s remaining equity in the Property.  *(See Exhibit "E" – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)*

34.     As per this HUD Settlement Statement, **GROGAN** received a total value of $55,840.68 for her Property worth at least $305,000, about 18% of the Property's value.  This total value consisted of the payment of $37,603.54 to **GROGAN** in cash, the payoff of two property tax liens of $13,778.91, and the payment of $4,458.23 for county property taxes for the Property through December 20, 2018.  In essence, Defendants stole **GROGAN's** property worth at least $305,000.00 for a total of only about $55,840.68 in value to **GROGAN** at closing.

35.     If this had been a real arms-length sale transaction, in exchange for the Deed to the entirety of her Property, **GROGAN** should have received the balance of the $305,000 alleged purchase price, $249,159.32 in cash (less reasonable closing costs). She did not receive these funds.

36.     Alternatively, if this transaction had been a traditional home equity loan, **GROGAN** should have retained an approximately 81-82% equity interest in her Property free and clear of any liens (this is derived from **GROGAN's** unpaid, retained equity of $249,159.32 divided

by total alleged sales price $305,000.00, less reasonable closing costs).  Despite the disparity between the Contract Sales Price and the total value she received at closing, **GROGAN** did not retain any equity in her Property.  Instead, at closing, Defendants **EK REAL ESTATE** and **EASYKNOCK** charged **NELSON** several bogus amounts to make it seem as if she received the full $305,000 purchase price value in exchange for the deed to her Property.   And Defendants **EK REAL ESTATE** and **EASYKNOCK** removed **GROGAN's** name entirely from the deed to her Property, a fact she didn't learn until several years later.

37.     Pursuant to the "Sale-Leaseback" scheme, Defendants **EK REAL ESTATE** and **EASYKNOCK** charged **GROGAN** $233,434.00 for the Lease, strapped **GROGAN** to rental payments of $18,900.00 for the first twelve months of a lease, a rental amount which escalated over each consecutive one-year period before **GROGAN** had the opportunity to pay off or "purchase' back the secured equity in her Property for the sum of $77,291.00 (which also escalated on an annual basis), *plus* all amounts paid by **EK REAL ESTATE** at closing.   **GROGAN** was also responsible for Defendant **EK REAL ESTATE's** inflated closing costs and any other Rents or Additional Rents that were due, including all repairs and maintenance on the Property.

38.     No disclosures were provided to **GROGAN** by either Defendants **EASYKNOCK** or **EK REAL ESTATE** pursuant to the Truth-In-Lending Act or the Texas Finance Code, which require the following disclosures, among others, be given **GROGAN** before she entered into this transaction:

        a.   Full disclosure of loan costs and terms;

        b.   The right of rescission;

        c.   Disclosing to the borrower when mortgage was reassigned;

        d.   Disclosure of the caps on high mortgage costs; and

     e.  Assessing whether the borrower had the ability to repay the loan prior to entering into the transaction with the borrower.

39.    Indeed, neither **EASYKNOCK** nor **EK REAL ESTATE** (nor **LENDINGONE**) conducted any substantive assessment of **GROGAN**'s financial ability to repay the "loan" or to pay the monthly rent, Additional rent, or other amounts due under the Lease.  All they did was verify several paystubs that **GROGAN** provided and apparently checked her credit score.  Prior to and at closing, Defendants knew **GROGAN** was unemployed, she had virtually no savings, and she had poor credit.  Thus, Defendants knew, and had every reason to believe, that **GROGAN** would be unable to pay the monthly and other Lease payments, let alone qualify for another loan to regain title to her residential homestead Property.

40.    Although **GROGAN** is doing better financially than she had been at the time of closing, her income remains unsteady, and she has consistently fallen behind on rent. **EASYKNOCK** and **EK REAL ESTATE** have repeatedly threatened **GROGAN** with legal proceedings, including eviction from her homestead Property.  All past due rental notices and threats of legal proceedings sent to **GROGAN** have come from Defendant **EASYKNOCK**.

41.    On or about August 12, 2020, in the height of the COVID pandemic, **EK REAL ESTATE** filed an eviction suit against GROGAN seeking to evict her and her minor child from her longtime primary residence and homestead Property.   That case is styled *EK REAL ESTATE SERVICES OF NY, LLC vs. Tara Grogan And All Occupants*, Case No. 207100208169, Justice of the Peace Court of Harris County, Precinct 7, Place 1.  The eviction trial was set to be heard on September 9, 2020.  On the eve of being evicted, on or about September 8, 2020, **EK REAL ESTATE** dismissed the eviction proceeding after **GROGAN** paid part of the past due rent and agreed, at the risk of losing her homestead, that the rest of the unpaid rent could be added to the cost to pay off **EASYKNOCK** and **EK REAL ESTATE's** loan.

42.     Shortly thereafter, on or about September 17, 2020, **EASYKNOCK** and **EK REAL ESTATE** entered into an agreement with **GROGAN** whereby **GROGAN**'s price to pay off **EASYKNOCK** and **EK REAL ESTATE's** loan was increased by $5,386.28, the amount of past due rent and late fees for the months of February and March 2020 and for prepaid rent for the months of June-September 2020.

### SUIT TO QUIET TITLE TO THE PROPERTY

43.     Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

44.     Plaintiff **GROGAN** was the fee simple owner of the Property which was her homestead prior to the sale-leaseback transaction made the subject of this suit.   Section 41.006 of the Texas Property Code, states as follows:

> (a) "Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

> (b) The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale…".

45.     Although Defendants **EASYKNOCK** and **EK REAL ESTATE** claimed that they were purchasing **GROGAN's** property for $305,000, **GROGAN**, who had about 95.5% equity in her Property (valued at least at approximately $291,000), only received the sum of $37,603.54 in cash from those "sales" proceeds ($55,840.68 in total value).  Further, **GROGAN** was charged $233,434 plus a monthly rental rate (and other charges) in connection with executing a *Lease with Tenant Option* so she could lease back the Property. These lease charges greatly exceeded the

charges for leasing similar properties in Houston, Harris County, Texas, especially given the condition the Property was in at the time of the "pretend sale" and leaseback.   Thus, **EASYKNOCK** and **EK REAL ESTATE** "purchased" **GROGAN's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from **GROGAN** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the leaseback far exceed the fair market rental value of the Property.   For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code, all payments made from **GROGAN** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the Texas Finance Code, the deed conveyed as part of the transaction is **VOID**, no lien ever legally attached to **GROGAN's** homesteaded Property, and the taking of this invalid deed is a deceptive trade practice under Subchapter E, Chapter 17 of the Texas Business and Commerce Code.

46.   At the time of the transaction, Defendant **EK REAL ESTATE** borrowed from Defendant **LENDINGONE** the sum of $78,000.00 and **LENDINGONE** filed a Deed of Trust against Plaintiff **GROGAN's** Property. As a result, Plaintiff **GROGAN** seeks to quiet title to the Property voiding the *General Warranty Deed with Vendor's Lien* given to Defendant, **EK REAL ESTATE** and the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE.**   Given that this is an impermissible transaction under §41.006 of the Texas Property Code, **GROGAN** requests that the Court find Defendants **EASYKNOCK, EK REAL ESTATE**, and **LENDINGONE** have no interest, legal, equitable or otherwise to her Property and that Plaintiff **GROGAN** is the rightful owner of the Property.

## DECLARATORY JUDGMENT

47.    Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

48.    Plaintiff **GROGAN** is entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code.  Plaintiff seeks the following declarations:

(a)    That Defendants **EK REAL ESTATE, EASYKNOCK** and **LENDINGONE** have no rights, title, or ownership interest in the Property;

(b)    That the General Warranty Deed with Vendor's Lien executed by **GROGAN** on December 20, 2018, is void as a matter of law;

(c)    That the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE** is void; and

(d)    That **GROGAN** is the rightful owner of the Property.

49.    Plaintiff has retained the law firms of Robin M. Ziek, Pogach PLLC, and Feldman & Feldman, P.C. to represent her in this action and have agreed to pay the foregoing attorneys their reasonable and necessary attorneys' fees.  An award of reasonable and necessary attorneys' fee in the amount of at least $100,000.00 or an amount as determined by the trier of fact to Plaintiff would be equitable and just and, therefore, authorized by §37.009 of the Tex. Civ Prac. & Rem. Code.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

50.    Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

51.    Plaintiff **GROGAN** is a natural person.

52.    At all times relevant hereto, Defendants **EASYKNOCK** and **EK REAL ESTATE** regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants creditors within the meaning of the Truth-In-Lending Act ("TILA"), 15 U.S.C. §1602(g) and

17

Regulation Z §226.2(a)(17).  Under Texas law, a sale-leaseback transaction, like the one at issue in this case, is a "loan" or "equitable mortgage." *See* Tex. Fin. Code §341.001(9) and (10) and Tex. Prop. Code §41.006.

53.    The transaction in question is a consumer credit transaction within the meaning of TILA, 15 U.S.C. §1602 and Regulation Z §226.2.  The security for the transaction is the primary dwelling of **GROGAN**.

54.    Defendants **EASYKNOCK** and **EK REAL ESTATE** did not provide to Plaintiff **GROGAN** a Truth In Lending Disclosure statement and as a result violated the requirements of the Truth In Lending Act in the following ways, among others:

a.    By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §1638(b), §1639, and Regulation Z §226.17(b);

b.    By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §1632(a), §1639, and Regulation Z §226.17(a);

c.    By failing to include in the finance charges certain charges imposed by Defendants payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. §1605 and Regulation Z §226.18(d);

d.    By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. §1606 and Regulation Z §226.22;

e.    By failing to disclose that **GROGAN** had a right of rescission;

f.    By failing to disclose to **GROGAN**: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. §1639;

g.    By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. § 1639c, including the ability to repay standards and the prohibition on arbitration agreements in connection with **GROGAN**'s principal dwelling.

55.     **GROGAN** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK**'s violations of TILA until the filing of this suit.  By reason of the aforesaid violations of the TILA and Regulation Z, Defendants are liable to Plaintiff **GROGAN** in the amount of twice the finance charge, actual damages to be established at trial, attorney's fees and costs, and any other amounts provided for under 15 U.S.C. §1640.

## TEXAS DECEPTIVE TRADE PRACTICES

56.     Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

57.     Plaintiff is a consumer under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiff is an individual who sought goods or services by purchase/lease.

58.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts that Plaintiff relied on to Plaintiff's detriment.  Specifically, Defendants violated the DTPA, among others, as follows:

      a.      Representing that an agreement confers or involves rights, remedies, or obligations that it does not or that are prohibited by law.

      b.      Failing to disclose information about goods and services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

      c.      Causing confusion or misunderstanding about the source, sponsorship, approval or certification of goods or services by another.

59.     Defendants **EK REAL ESTATE EASYKNOCK** violated the DTPA when Defendants engaged in an unconscionable action or course of action that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.  Specifically, Defendants **EK REAL ESTATE** and **EASYKNOCK** induced Plaintiff

**GROGAN** into entering into a "loan" transaction, a transaction concerning her homestead which was prohibited by law.  Defendants knew none of them was qualified as a lender with the Texas Office of Consumer Credit Commission to lend against Plaintiff **GROGAN**'s homestead. Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **GROGAN** did not have the ability to pay back the loan on the onerous lending terms and rates and at charges that exceeded the maximum rates allowed by law.

60.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiff relied upon to Plaintiff's detriment and that violated a "tie-in" consumer statute, specifically §41.006 of the Texas Property Code, when Defendants induced Plaintiff **GROGAN** into entering into an impermissible "Sale-leaseback" transaction on her homestead.  Furthermore, representations made by **EASYKNOCK**, as well as the marketing materials and correspondence sent to Plaintiff **GROGAN** by Defendant **EASYKNOCK** concerning the transaction, used the terms "Equity Specialist," "Home Refinance," and "new flexible equity release program" (and made similar deceptive representations) thus confusing this type of transaction with a home equity loan.

61.     **GROGAN** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK**'s false, misleading, and deceptive acts and practices until the filing of this suit.

62.     It was impracticable for Plaintiff **GROGAN** to give Defendants **EASYKNOCK** and **EK REAL ESTATE** pre-suit written notice under the Texas Business & Commerce, §17.505(a) ("DTPA") because Plaintiff is nearing the end of her limitations period on her claim. Therefore, pre-suit written notice was not required.

63.     Defendants' wrongful conduct was a producing cause of Plaintiff's injuries which resulted in the following damages:

  a.     Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court;

  b.     Defendants acted knowingly and intentionally which entitled Plaintiff to recover mental-anguish damages under the Texas Business & Commerce Code, §17.50(b)(1) in an amount to be determined by the trier of fact;

  c.     Defendants acted knowingly and intentionally which entitles Plaintiff to recover treble economic and mental anguish damages under the Texas Business & Commerce Code, §17.50(b)(1); and

  d.     Plaintiff is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code, §17.50(d) in an amount to be determined by the trier of fact.

## USURY UNDER THE TEXAS FINANCE CODE

64.     Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

65.     On or about December 20, 2018, Defendants **EK REAL ESTATE** and **EASYKNOCK** loaned money to Plaintiff **GROGAN** disguised as a "Sale-Leaseback" loan transaction. The loan between **GROGAN** and Defendants **EASYKNOCK** and **EK REAL ESTATE**, in which **LENDINGONE** participated, only provided **GROGAN** with $37,603.54 in cash and about $14,000 to pay property taxes.   Defendants **EK REAL ESTATE** and **EASYKNOCK** had the Property appraised to look like a $305,000.00 sale to them from **GROGAN**.  From a purported sale of the Property for the sum of $305,000.00, Plaintiff received a total value of $55,840.68 in total value.  Disguised as a Tenant Lease Option on the HUD form, Defendants **EK REAL ESTATE** and **EASYKNOCK** took a $233,434.00 fee and other fees against the sales price.

66.     Plaintiff **GROGAN** had an obligation to repay the principal amount of Defendants'

loan because, no matter how the Lease terminated, voluntarily by **GROGAN** or involuntarily

through her default, the Lease requires that the Successor Purchaser Option Price is triggered, and

the loan is paid off from the proceeds.

67.     Defendants **EK REAL ESTATE** and **EASYKNOCK** contracted for and received

interest that exceeded the maximum amount allowed by law by charging excessive fees including

without limitation, at least the following:

      a.     Tenant Lease Option - $233,434.00;
      b.     Processing Fees of $6,100.00;
      c.     Lease Payments of $18,900.00 in the first year;
      d.     Lease Payments of at least $ 19,372.50 in the second year;
      e.     Lease Payments of at least $ 19,856.81 in the third year;
      f.     The difference between the amount received by Plaintiff for (or were satisfied by) the loan of $55,840.68 and the repayment option of $77,291.00, if repurchased within the first twelve months, at least $79,223.28 if repurchased within twenty-four months and at least $86,724.79 if repurchased within thirty-six months plus closing costs and rents; and
      g.     Excessive closing costs.

68.     Defendants' unlawful conduct caused injury to Plaintiff **GROGAN** which resulted

in the following damages:

      a.     Statutory Penalties; and

      b.     Attorney's fees.

69.     Plaintiff **GROGAN** seeks unliquidated damages within the jurisdictional limits of

this Court.

70.     Plaintiff **GROGAN** is entitled to recover statutory penalties under Texas Finance

Code, §305.001(a), that being the greater of the following:

      a.     Three times the amount by which the interest contracted for, charged, or received exceeds the maximum amount of interest allowed by the usury statute; or

   b. $2,000.00 or 20% of the principal, whichever is less.

71. In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiff **GROGAN** is seeking the forfeiture of all principal, interest, and other amounts charged and received pursuant to Tex. Fin. Code §305.002.

72. Plaintiff **GROGAN** is further entitled to recover reasonable attorney's fees under Texas Finance Code, §349.001 against Defendants **EK REAL ESTATE** and **EASYKNOCK**. Plaintiff has hired the undersigned attorneys to represent her interests in this matter and have agreed to pay the attorneys a reasonable rate for their services.  Plaintiff **GROGAN** seeks to recover her reasonable and necessary attorney's fees from Defendants, jointly and severally, in this matter in an amount as determined by the trier of fact.

## ADDITIONAL VIOLATIONS OF TEXAS FINANCE CODE GOVERNING LOANS AND FINANCED TRANSACTIONS §§ 341.011– 354.007, *et seq.*

73. Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

74. At all times relevant hereto, **GROGAN** is considered an "obligor" under the Texas Finance Code and Defendants **EASYKNOCK** and **EK REAL ESTATE**'s "Sale-Leaseback transaction is a "loan" under the Texas Finance Code.  *See* Tex. Fin. Code §341.001(9) and (10). This loan transaction was subject to the requirements of Texas Finance Code §342.001, *et. seq.* (Consumer Loans) and §343.001, *et seq.* (Home Loans).

75. In connection with the loan transaction at issue in this case, Defendants **EASYKNOCK** and **EK REAL ESTATE** violated the Texas Finance Code, among other ways, by:

   a. engaging in the business of making, transacting, or negotiating loans subject to this chapter without holding a license issued under this chapter, Tex. Fin. Code § 342.051;

b.   failing to make required disclosures, Tex. Fin. Code § 343.102;

c.   failing to provide required notices, Tex. Fin. Code § 343.105; and

d.   engaging in a pattern or practice of extending credit to consumers under high-cost home loans based on the consumers' collateral without regard to the obligor's repayment ability, including the obligor's current and expected income, current obligations, employment status, and other financial resources, other than the obligor's equity in the dwelling that secures repayment of the loan, Tex. Fin. Code § 343.204;

76.   For violating these additional provisions of the Texas Finance Code, pursuant to Tex. Fin. Code. § 349.003, Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to **GROGAN** for (1) three times the actual economic loss to **GROGAN** that resulted from each violation; or, alternatively, (2) since each violation was material and induced **GROGAN** to enter into a transaction that he would not have entered if the violation had not occurred, twice the interest or time price differential contracted for, charged, or received, not to exceed $4,000 because the amount financed exceeds $5,000. Defendants are also liable for **GROGAN**'s reasonable attorney's fees in an amount to be determined by this Court

### **COMMON LAW AND STATUTORY FRAUD**

77.   Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

78.   Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to Plaintiffs for common law fraud, fraud by nondisclosure, fraudulent inducement, and, pursuant to Tex. Bus. & Com. Code § 27.01, statutory fraud.

79.   Specifically, as described throughout this Complaint:

a.   The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

b.   Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so. Among other things, as

described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that the Sale-Leaseback loan transaction was a home equity loan; that they are engaged in the business of bad credit "Home Refinancing;" and that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit;

c.  Defendants made additional false, deceptive, and material representations in their marketing materials.  As described above, Defendants' marketing materials described their Sale-Leaseback transaction to **GROGAN** as an opportunity to "release" a portion of the equity in her home; Defendants represented that **GROGAN** would still have equity in her homestead after the closing, and she would still be listed on the deed to her Property, **GROGAN** would retain at least a 76.5% equity interest in her Property retained equity value in her Property, and that **GROGAN's** retained equity value was worth at least $233,000.00 in cash at closing; Defendants further represented that their ' "new flexible equity release program" would enable **GROGAN** "to access the equity without having to move;" **GROGAN** could stay in her home, save on having to pay insurance and taxes while she lived in her home, and move only when she is ready;

d.  Defendants falsely represented in communications and in the contract that taxes and insurance on the Property would be Defendants' responsibility.  Unbeknownst to her, Defendants were passing through those charges to her monthly as part of the rent charged for her Property.

e.  Defendants falsely advertise that their process involves "Home Refinancing With Bad Credit," that their "new flexible equity release program . . . enables you to access the equity without having to move," that "EasyKnock offers homeowners a sale-leaseback option to get money from their home equity without moving," and that "EasyKnock is a legit company that can be a great help to homeowners in a tight spot."

f.  Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for her Property.

g.  Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

    h.   The representations and omissions were material and false.

    i.   Defendants made these representations or omitted material facts with the intent that Plaintiff rely on the representations or omissions.

    j.   Plaintiff relied on these representations and Defendants' nondisclosure.

    k.   In relying on these representations and without the knowledge of the undisclosed facts, Plaintiff **GROGAN** was injured.

80.    For the common law fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from Defendants **EASYKNOCK** and **EK REAL ESTATE,** her actual damages, exemplary damages, costs of court, and pre-and post-judgment interest.

81.    For her statutory fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from the Defendants **EASYKNOCK** and **EK REAL ESTATE**, her actual damages, and, pursuant to Tex. Bus. & Com. Code § 27.01(d) and (e), exemplary damages, attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## **CONSPIRACY**

82.    Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

83.    Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiff **GROGAN** for participating in a conspiracy.

84.    Each of the Defendants was a member of a conspiracy. They conspired to commit acts of fraud and other statutory and common law torts, as described above. In so doing, the Defendants had a meeting of the minds to accomplish the wrongful acts described above, committed one or more acts in furtherance of the conspiracy to commit the unlawful causes of action described above and caused Plaintiff actual harm as a result of their conspiratorial conduct.

85.    Accordingly, Plaintiff is entitled to recover from each conspirator Plaintiff's actual damages and exemplary damages, as well as for such conspirator's joint and several liability with

the other actors concerning each cause of action described above.  In connection, with the statutory torts, **GROGAN** is entitled to recover from each conspirator, jointly and severally, her attorneys' fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

### AIDING AND ABETTING

86.    Plaintiff **GROGAN** adopts all preceding paragraphs as if recited verbatim herein.

87.    Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiff **GROGAN** for aiding and abetting one or more of the others in the conduct described in this Complaint.

88.    Specifically, as described throughout this Complaint:

   a.   Each Defendant committed torts;

   b.   Each Defendant had knowledge that these primary actors' actions constituted torts;

   c.   the Defendants had the intent to assist these primary actors in committing the torts;

   d.   each of the Defendants gave the primary actors assistance or encouragement; and

   e.   the assistance or encouragement provided by the Defendants was a substantial factor in causing the tort.

89.    Alternatively, as described throughout this Complaint:

   a.   the primary actors' activity accomplished a tortious result;

   b.   each of the Defendants provided substantial assistance to the primary actors in accomplishing the tortious result;

   c.   each of the Defendants' own conduct, separate from the primary actors', breached duties owed to Plaintiff; and

   d.   the participation of each Defendant was a substantial factor in causing the tort.

90.     Plaintiff is entitled to recover damages from each of the Defendants, jointly and severally, for each cause of action they aided & abetted.

## JURY DEMAND

91.     Plaintiff demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER

Plaintiff **TARA GROGAN** prays that the Court enter Judgment in favor of **TARA GROGAN** jointly and severally against Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, INC.,** for the damages as set forth herein and for such other and further relief, in law or at equity, to which she may be justly entitled.

Dated: November 3, 2021.

Respectfully submitted:

By:___/s/ Robin Ziek_____

Robin Ziek, Attorney at Law
Attorney-In-Charge
State Bar No. 22262575
Federal I.D. No. 8231
24 Greenway Plaza, Suite 2050
Houston, TX 77046
Telephone: (713) 222-8030
Facsimile: (832) 565-9011
rziek@sbcglobal.net

### ATTORNEYS FOR ROBYN GROGAN

**OF COUNSEL:**

**POGACH PLLC**

Adam D. Pogach
State Bar No. 24048734

Federal I.D. No. 634567
24 Greenway Plaza, Suite 2050
Houston, TX 77046
Telephone: (713) 524-5400
Facsimile: (713) 524-540
Email: adam@lawdifferent.com

**FELDMAN & FELDMAN, P.C.**

Cris Feldman
State Bar. No.: 24012613
Federal I.D. No. 712459
3355 W. Alabama Street, Suite 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
Email: cris.feldman@feldman.law